UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80658-Civ-HURLEY
          (00-8075-Cr-HURLEY)
MAGISTRATE JUDGE P. A. WHITE

LELIO DELVA,                    :

          Movant,              :

v.                             :        <u>REPORT OF</u>
                                        <u>MAGISTRATE JUDGE</u>
UNITED STATES OF AMERICA,       :

          Respondent.          :
_____

<u>Introduction</u>

This matter is before the Court on the movant's motion to vacate, attacking his convictions and sentences for conspiracy to possess with intent to distribute at least 50 grams of crack cocaine, two counts of possession with intent to distribute crack cocaine, and two counts of distributing crack cocaine, entered following a jury verdict in case no. 00-8075-Cr-Hurley. The court has reviewed the motion with supporting memorandum, the government's response with multiple exhibits, the movant's reply, the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

<u>Claims Raised</u>

The movant raises the following claims:

     1.   His defense counsel was operating under
          an actual conflict of interest. (Cv-
          DE#1:4).

     2.   He was denied effective assistance of
          counsel, where his lawyer failed to
          advise the movant of a ten-year plea

offer extended by the government. (Cv-DE#1:5).

3.  He was denied effective assistance of appellate counsel, where his lawyer failed to argue that the court lacked jurisdiction to enhance the movant's sentence pursuant to 21 U.S.C. §851. (Cv-DE#1:7).

4.  Pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), together with <u>Blakely v. Washington</u>, 524 U.S. 296 (2004) and its progeny, <u>United States v. Booker</u>, 543 U.S. 220 (2005), the movant is entitled to vacatur of his sentence because the quantity of drugs involved in the offenses was not charged in the Indictment nor proved beyond a reasonable doubt. (Cv-DE#1:12).

<u>Procedural History</u>

The movant was charged by Superseding Indictment with conspiracy to possess with the intent to distribute at least 50 grams of crack cocaine (Count 1), possession with the intent to distribute at least five grams of crack cocaine (Count 2), distribution of at least five grams of crack cocaine (Count 3), possession with the intent to distribute at least fifty grams of crack cocaine (Count 4), and distribution of at least fifty grams of crack cocaine. (Cr-DE#26). On December 1, 2000, the government night box filed a Drug Sentencing Information, notifying the movant of its intent to rely upon the 21 U.S.C. §841(b) sentencing enhancement. (Cr-DE#75). The notice of enhancement bears a certificate of service dated December 4, 2000. (Id.). On December 4, 2000, voir dire began in the movant's trial. The movant was convicted as charged, following a jury verdict. (Cr-DE#s80-81). On March 16, 2001, the movant was sentenced to five concurrent terms of 240 months in prison, followed by a total of ten years of

2

supervised release (Cr-DE#94).

The movant appealed, raising the sole claim[1] that the court erred in admitting prejudicial evidence, in violation of Fed.R.Evid. 404(b).  On October 21, 2002, the Eleventh Circuit Court of Appeals *per curiam* affirmed the movant's convictions and sentences in a written, but unpublished opinion.  United States v. Francois, et al., 54 Fed.Appx. 490 (11th Cir. 2002); (Cr-DE#121). Certiorari review was denied by the Supreme Court on October 3, 2005.  Delva v. United States, 546 U.S. 917 (2005).  This motion to vacate was executed by the movant on October 1, 2006. (Cv-DE#1).

<u>Timeliness of Motion</u>

In its response to this court's order to show cause, the government maintains that this federal petition is time-barred. Pursuant to 28 U.S.C. §2255, as amended April 24, 1996, a one year period of limitations applies to a motion under the section. The one year period runs from the latest of:

> (1)  The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2)  The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from filing by such governmental action;
>
> (3)  The date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)  The date on which the facts supporting the claim or claims could have been discovered through the exercise of due diligence.

---

[1] The claims are gleaned from the written but published appellate opinion, United States v. Francois, et al., 54 Fed.Appx. 490 (11th Cir. 2002) (Cr-DE#121).

The Eleventh Circuit has held that the limitations period may be equitably tolled when a movant's timely filing of a motion to vacate is impeded by extraordinary circumstances beyond his control and unavoidable even with due diligence. See Helton v. Secretary for Dept. of Corrections, 259 F.3d 1310, 1312 (11 Cir. 2001)(stating that "[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition."), cert. denied, ___ U.S. ___, 122 S.Ct. 1965 (2002); Sandvik v. U.S., 177 F.3d 1269, 1270 (11 Cir. 1999).

With the passage of the Antiterrorism and Effective Death Penalty Act, litigants must be attentive to the time limitations for filing a motion to vacate, and make diligent efforts to file the motion within one year from the time their convictions become final. United States v. Trenkler, 268 F.3d 16, 24-27 (1st Cir. 2001); United States v. Prescott, 221 F.3d 686, 687-689 (4 Cir. 2000)(pending motion for new trial after finality of direct review does not toll AEDPA's statute of limitations); O'Connor v. United States, 133 F.3d 548 (7 Cir. 1998); Johnson v. United States, 246 F.3d 655 (6 Cir. 2001); United States v. Norris, 2000 WL 521482 (DC Cir. 2000); United States v. Chambers, 126 F.Supp.2d 1052 (E.D. Michigan 2000).

The respondent first argues that the federal limitations period began to run on January 22, 2003, when the ninety day period for filing a certiorari petition expired. (Cv-DE#8:5). According to the respondent, the period from 2003 until the filing of the movant's certiorari petition in 2005 should not be tolled because the certiorari petition should have been filed within ninety days

of the appellate court's decision on direct appeal. Thus, the respondent concludes that this federal petition is not timely because there was over one year of untolled time from after the movant's conviction became final until he filed for certiorari review.

Review of the Supreme Court's docket sheet reveals that the Supreme Court accepted the certiorari petition, and then summarily denied it on October 3, 2005 without written opinion.[2] See also Delva v. United States, 546 U.S. 917 (2005). The law is clear that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, Bond v. Moore, 309 F.3d 770 (11 Cir. 2002); Coates v. Byrd, 211 F.3d 1225 (11 Cir. 2000). In this case, the federal one year limitations period began to run when certiorari review was denied by the Supreme Court on October 3, 2005, and not as the government asserts, when the time for its filing expired.  Thus, the movant had until October 3, 2006 within which to timely file this collateral case.

The government next asserts that for purposes of determining the one-year limitations period, this court should not apply the mail-box rule for purposes of establishing when the movant filed this federal motion to vacate. According to the government, the movant failed to follow proper prison procedure for mailing legal mail as there is no record that he handed the motion to prison authorities for mailing. According to the government, in March 2006, the institution where the movant was confined required that all outgoing inmate legal mail be logged. The procedure required

---

[2]The Supreme Court's docket sheet can be found on-line at Westlaw, a legal research database, at http://web2.westlaw.com/.

inmates to deliver legal mail to ISM staff who would accept the legal mail during open house hours every weekday between 6:45 a.m. and 7:00 a.m.. (DE#12:Ex.H). In turn, staff would maintain a log of all outgoing legal mail. (Id.). According to Jacqueline Johnson, Supervisory Inmate Systems Specialist at F.C.I.-Elkton, a review of the facility's outgoing legal mail log failed to disclose that any legal mail was logged for the movant either during October 2006 or August 2007.(Cv-DE#8:Ex.H). The government thus concludes that the movant has failed to establish that the motion was handed to prison authorities and, therefore, the October 1, 2006 signature date should not be used as the date of filing for purposes of determining the one-year federal limitations period.

In his traverse (Cv-DE#13), the movant maintains that he placed the motion for mailing with prison authorities on the date he signed it, October 1, 2006. He argues that during that time, he was housed in a Special Housing Unit ("SHU"), and as such, outgoing legal mail is deposited for mailing with prison authorities by slipping it under an inmate's cell door for pick-up by prison staff. (Id.:4). According to the movant, incoming mail is also delivered by prison staff in the same manner as SHU inmates are in lockdown 23-hours a day. (Id.).

The law is clear that under the "prison mailbox rule," a prisoner's habeas petition is deemed filed when it is handed over to prison authorities for mailing. See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999); Houston v. Lack, 487 U.S. 266, 276 (1988). The mailbox rule applies to prisoner filing habeas petitions in both federal and state courts. Huizar v. Carey, 273 F.3d 1220, 1222 (9th Cir. 2001)(citation omitted). In this case, the federal motion to vacate was signed by the movant on October 1, 2006. (Cv-DE#1). Nowhere in the government's response does it establish the procedure for outgoing legal mail as it pertains to inmates in the

SHU, nor does it provide a redacted copy of the prison log for the entire period October 2006 through and including August 2007. The government only provided a two-month log, October 2006 and August 2007, which reflects that no legal mail from the movant was logged as outgoing by prison officials.

However, the Eleventh Circuit has held that the burden is on prison authorities to prove the date a prisoner delivered his documents to be mailed. See <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001); <u>Clay v. United States</u>, 2007 WL 4336356 (11th Cir. 2007). Absent evidence to the contrary in the form of prison logs or other records, this court will assume that the movant's motion was delivered to prison authorities the day the movant signed it, October 1, 2006. See <u>Washington v. United States</u>, <u>supra</u>; <u>Allen v. Culliver</u>, 471 F.3d 1196, 1998-99 (11th Cir. 2006); <u>Marsh v. Soares</u>, 223 F.3d 1217, 1218 n.1 (10th Cir. 2000)("Liberal application of the mailbox rule ... causes us to treat the petition as placed in the hands of prison authorities on the same day it was signed."). In this case, as in <u>Washington</u>, <u>supra</u>., the government has offered no evidence to rebut the movant's assertions in his traverse that he tendered his motion to prison officials on the date he signed it, which is the date he claims he slipped it under his cell, while confined in the SHU, for prison officials to pick-up. Thus, absent objective evidence to the contrary, this motion is deemed timely filed on October 1, 2006, when the movant signed the motion. Regardless, this court need not belabor the timeliness issue, as the claims raised herein also fail on the merits.

## Discussion of the Claims

In this collateral proceeding, the movant raises multiple claims which challenge counsel's effectiveness. In order for the movant to prevail on a claim of ineffective assistance of counsel,

he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

In **claim one**, the movant asserts that his defense counsel was

operating under an actual conflict of interest. (Cv-DE#1:Memo:4). The thrust of the movant's argument appears to be that defense counsel, who was also appellate counsel, must have been operating under a conflict because he filed an inadequate brief on appeal and thereafter failed to request certiorari review of the Supreme Court. (<u>Id</u>.). He also appears to argue generally that counsel should have raised the arguments presented in this collateral proceeding on direct appeal. (<u>Id</u>.:4-5).

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense which includes two correlative rights, "the right to be represented by counsel of choice" and "the right to a defense conducted by an attorney who is free from conflicts of interest." <u>See</u> <u>United States v. Ross</u>, 33 F.3d 1507, 1523 (11th Cir. 1994); <u>see also</u>, <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981). However, it is well settled that joint representation does not, in itself, violate this guarantee. <u>Holloway v. Arkansas</u>, 435 U.S. 475 (1978); <u>United States v. Benavidez</u>, 664 F.2d 1255, 1258-59 (5th Cir. 1982).

A movant claiming that counsel labored under a conflict of interest in violation of the Sixth Amendment must demonstrate that: (1) his attorney had an actual, not speculative, conflict of interest, and (2) the conflict adversely affected counsel's performance. <u>United States v. Novaton</u>, 271 F.3d 968, 1010-1011 (11th Cir. 2001), <u>citing</u> <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980); <u>accord</u>, <u>United States v. Ettinger</u>, 344 F.3d 1149, 1161 (11th Cir. 2003). A defendant who fails to show both an actual conflict and an adverse affect is not entitled to relief. <u>United States v. Novaton</u>, 271 F.3d 968, 1010 (11th Cir. 2001); <u>Burden v. Zant</u>, 24 F.3d 1298, 1305 (11th Cir. 1994).

The Eleventh Circuit has adopted a test to distinguish actual from potential conflicts in the context of joint representation of codefendants. The movant must "point to specific instances in the record to suggest an actual conflict or impairment of their interests, make a factual showing of inconsistent interests, and demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." Barham v. United States, 724 F.2d 1529, 1532 (11th Cir.), cert. den'd, 467 U.S. 1230 (1984); see also, Porter v. Wainwright, 805 F.2d 930, 939-40 (11th Cir. 1986); see e.g., Turnquest v. Wainwright, 651 F.2d 331, 333 (5th Cir. 1981); Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999), quoting, Smith v. White, 815 F.2d 1401, 1405 (11th Cir. 1987).

Once a defendant demonstrates that a conflict of interest actually affected his representation, he need not demonstrate prejudice to obtain relief. Novaton, supra at 1010. Rather, "[p]rejudice is presumed...if the defendant demonstrates that ... 'an actual conflict of interest adversely affected his lawyer's performance.'" Strickland, 466 U.S. at 692, quoting, Cuyler, 466 U.S. at 358; Burden v. Zant, 24 F.3d 1298 (11th Cir. 1994); Porter v. Singletary, 14 F.3d 554 (11th Cir. 1994). In this case, the movant needs to first establish the actual conflict. The movant provides no evidence to support his assertion that an actual conflict of interest existed.

Even if we were to assume that an actual conflict of interest existed between the movant and his attorney, the movant must show that his attorney's performance was "adversely affected" by the conflict. It is true that a movant need not show that the result of the proceeding would have been different without the conflict of

interest, only that the conflict had some adverse effect on
counsel's performance. Strickland, 466 U.S. at 694. To prove an
adverse effect, a defendant must: 1) "point to some plausible
alternative defense strategy or tactic" that might have been
pursued, 2) "demonstrate that the alternative strategy or tactic
was reasonable"[3] under the facts in his case, and 3) "show some
link between the actual conflict and the decision to forgo the
alternative strategy of defense."[4] Novaton, supra at 1011, citing
Freund v. Butterworth, 165 F.3d 839, 860 (11 Cir. 1999) (en banc).
In the absence of a showing of an "adverse effect," prejudice is
not presumed to flow from a conflict of interest. Id. In this case,
no actual conflict or adverse effect has been demonstrated.

To the extent the movant means to argue that the conflict
arose because appellate counsel failed to seek certiorari review of
the Eleventh Circuit's decision affirming his convictions and
sentences, or failed to advise the movant that he could file a
certiorari petition pro se, the movant is likewise entitled to no
relief on this basis.

"'A review on writ of certiorari is not a matter of right, but
of judicial discretion, and will be granted only when there are
special and important reasons therefore.'" United States v.
Ferrell, 730 F.Supp. 1338, 1340 (E.D. Penn. 1989) (citing Sup.Ct.R.
17). There is no federal constitutional right to appeal a criminal
conviction to the Supreme Court, Ross v. Moffitt, 417 U.S. 600, 617

---

[3]Because prejudice is presumed under Strickland, 466 U.S. at 692, the
movant "'need not show that the defense would necessarily have been successful
if [the alternative strategy or tactic] had been used,' rather he only need prove
that the alternative 'possessed sufficient substance to be a viable
alternative.'" Freund, 165 F.2d at 960, citing, United States v. Fahey, 769 F.2d
829, 836 (1st Cir. 1985).

[4]In other words, he must establish that the alternative defense was
inherently in conflict with or not undertaken due to the attorney's other
loyalties or interests. Novaton, supra at 1011, citing, Freund, 165 F.3d at 860.

(1974); therefore, the right to counsel extends to appeals as of right, and not to discretionary review.  <u>United States v. Austin</u>, 513 U.S. 5, 8 (1994) (A court-appointed lawyer may only file a certiorari petition to the Supreme Court if there are meritorious grounds for certiorari review.)[5]; <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1986). Accordingly, counsel was only ineffective if the movant was prejudiced by counsel's failure to file a petition for certiorari review.

As previously narrated in this Report, the movant has been unable to demonstrate that certiorari review would have been favorable. To the contrary, it appears from the record that the movant *pro se* sought certiorari review which was denied by the Supreme Court. Under these circumstances, the movant has failed to satisfy the prejudice prong of <u>Strickland</u>, <u>supra</u>, arising from counsel's failure to seek or otherwise inform the movant of his right to seek certiorari review.

If the movant means to argue appellate counsel was ineffective for failing to raise on appeal the claims asserted in this collateral proceeding, as will be discussed in this Report, none of the claims are meritorious. Under these circumstances, the movant cannot establish prejudice arising from counsel's failure to pursue these issues on appeal. <u>See</u> <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987).

In **claim two**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to advise the movant of a ten-year plea offer extended by the government. (Cv-DE#1:Memo:5). According to the movant, the government extended a

---

[5]In <u>Austin</u>, the Supreme Court further directed Courts of Appeals to adopt rules consistent with the holding of the case.  The Eleventh Circuit adopted its new rule, Addendum Four, §§ f(4) and (5), effective January 2, 1996.

plea offer which included an agreement that it would not file an §851 information, and that the movant's guideline range would be reduced based on application of the safety valve provisions of the guidelines. (Id.). According to the movant, he never learned of the government's plea offer until almost two years after his conviction.

In its response, the government argues that this claim is belied by the record. (Cv-DE#8:9). The government has provided a negotiated written plea agreement executed by the movant on November 30, 2000, wherein the movant agreed to plead guilty to Count 1, in exchange for the government's dismissal of all remaining charges at sentencing. (Cr-DE#73). On that same date, the movant appeared before the court for a Rule 11 change of plea hearing. (Cv-DE#8:Ex.B). Review of the transcript of that proceeding reveals that the court conducted a thorough change of plea hearing. At that time, the movant acknowledged that he was under oath and was required to answer the court's questions truthfully. (Id.:3). When asked by the court why he was pleading guilty, the movant responded:

> Well, what happened is that I am going to do that because I find myself in this situation and I have been charged of this charges. I have been accused of these charges. I have to resign myself because of the mother of my children and her friends got me in this situation and I see no way out and the only thing that I was doing was taking care of the kids.

(Id.:5).

After the court asked the government to explain the nature of the charges, the movant next stated under oath the following:

> Well, the thing is, the situation, the way I
> became involved was that I was baby-sitting.
> In fact, one woman baby-sat the other woman's
> children, and the woman and I, the mother of
> my children we always argued because of some
> things including this situation, it has been
> going on for three to four years. In fact, she
> argued with her friend who lived across the
> hall from her. They fought and then they
> became friends again.

(Id.:6).

When asked by the court if he was involved in the drug
business, the movant responded in the affirmative (Id.:7), but then
explained as follows:

> Well, when you ask me if I am involved, yes.
> The way that I might be involved is that the
> woman told me to come to the house because she
> had some money to give to her cousin, and that
> she said she was going to tell the cousin that
> was my money. What she said is that she was
> going to tell her cousin that I was the one
> that had the money to give him, and that is
> what I had to do show up with the money and
> then I would leave.

(Id.:7).

The movant, however, then stated that he didn't even bring any
money, that the woman only told him to just show up, and further
denied ever possessing any drugs. (Id.). He acknowledged that the
woman had indicated that she was going to sell drugs to her cousin,
but did not want to do so on credit. (Id.). After a brief proffer
of facts from the government which revealed that the movant was
working with coconspirator Francois to cook crack cocaine and then
deliver it, the movant denied the facts, stating that he only
worked with Francois at Francois' restaurant. (Id.:9). The court
then asked the movant whether he was ever involved in the drug

14

business with Francois, to which the movant responded in the negative. (<u>Id</u>.:10). In light of these representations, where the movant failed to admit his guilt or his involvement in the drug business, the court determined correctly that it could not accept the movant's guilty plea, and therefore set the matter over for trial. (<u>Id</u>.).

The law is clear that the Sixth Amendment right to counsel includes the right to competent advice regarding the choice to accept a plea bargain or go to trial. <u>Turner v. Tennessee</u>, 664 F.Supp. 1113, 1120 (M.D. Tenn.), <u>aff'd</u>, 858 F.2d 1201 (6 Cir. 1988), <u>vacated on other grounds</u>, 492 U.S. 902 (1989), <u>reinstated</u>, 726 F.Supp. 1113 (M.D. Tenn. 1989), <u>aff'd</u>, 940 F.2d 1000 (1991), <u>cert.denied</u>, 502 U.S. 1050 (1992); <u>accord</u>, <u>Johnson v. Duckworth</u>, 793 F.2d 898, 900-02 (7 Cir.), <u>cert.denied</u>, 479 U.S. 937 (1986)(criminal defendant has right to effective assistance of counsel in deciding whether to accept or reject proposed plea agreement); <u>United State ex rel. Caruso v. Zelinsky</u>, 689 F.2d 435, 438 (3 Cir. 1982)(decision to reject plea agreement is critical stage at which right to effective assistance attaches); <u>Beckham v. Wainright</u>, 639 F.2d 262, 267 (5 Cir. 1991)(incompetent advice to withdraw negotiated plea and proceed to trial violated defendant's Sixth Amendment right).

A lawyer is obligated to keep the client informed of important developments, including any plea agreement offered by the government. Counsel's failure to do so is ineffective assistance. <u>Diaz v. United States</u>, 930 F.2d 832, 834 (11 Cir. 1991), <u>citing</u>, <u>Johnson v. Duckworth</u>, <u>supra</u>; <u>see also</u>, <u>Pham v. United States</u>, 317 F.3d 178, 182-83 (2d Cir. 2003)(defense counsel's failure to inform defendant of government's "global plea offer" constituted ineffective assistance); <u>Jones v. Wood</u>, 114 F.3d 1002, 1012 (9th Cir. 1997)(failure to inform client of plea bargain may have risen

to the level of ineffective assistance of counsel if petitioner had shown prejudice); United States v. Rodriquez, 929 F.2d 747, 752 (1st Cir. 1991)("Ordinarily, counsel's failure to inform client of plea agreement constitutes ineffective assistance of counsel."); United States v. Zelinsky, 689 F.2d 435, 438 (3rd Cir. 1982)("It would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards.").

In reviewing ineffective assistance of counsel with respect to guilty pleas, the United States Supreme Court has applied the "objective standard of reasonableness" by considering whether counsel's representation was "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)(applying Strickland requirements to review for ineffective assistance of counsel with respect to guilty pleas (citations omitted)). With regard to the prejudice prong, the Court held that the inquiry focused on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. If it is found that counsel failed to inform his client of the government's plea offer, the remedy is for the District Court to ensure that the government reinstates its original plea offer.  United States v. Baylock, 29 F.3d 1458, 1468 (9 Cir. 1994).

However, as with other claims of ineffective assistance, a defendant who claims that counsel performed ineffectively in connection with a decision to reject a plea offer must demonstrate that he suffered prejudice to prevail. Turner, supra, 858 F.2d at 1201. In the specific context of a claim that counsel rendered ineffective assistance in connection with a rejected plea offer, a petitioner seeking to establish prejudice must prove that there was reasonable probability that absent counsel's error she would have

16

accepted the offer. <u>Diaz</u>, 930 F.2d at 835; <u>Jones v. Wood</u>, 114 F.3d 1002 (9 Cir. 1997), and cases cited at 1012.

In this collateral proceeding, the movant has failed to establish either deficient performance or prejudice as to this claim. First, it is clear from the record that the movant signed a written plea agreement and appeared for a change of plea proceeding. At that time, however, the movant denied involvement in the drug business and the court was without recourse but to refuse to accept the movant's guilty plea. Moreover, the movant's self-serving allegation in his traverse that there was another plea extended by the government is unsupported by the record.[6] Under the circumstances present here, it is evident that counsel communicated with his client regarding the terms of the government's plea offer. However, the movant himself rejected the plea, refusing to acknowledge his involvement in the charged offenses, maintaining his innocence and lack of involvement in the drug business. Absent objective evidence that there existed another plea offer, the movant's conclusory allegation is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962). Regardless, under the circumstances present here, no deficient performance or prejudice has been established arising from counsel's failure to convey a second, non-existent plea offer. The movant is entitled to no relief on this claim.

In **claim three**, the movant asserts that he was denied effective assistance of appellate counsel, where his lawyer failed to argue that the court lacked jurisdiction to enhance the movant's sentence pursuant to 21 U.S.C. §851. (Cv-DE#1:Memo:7). According to the movant, the prior conviction used to support his enhanced sentence was unconstitutionally obtained. (Cv-DE#13:8). The movant

---

[6]In its response, the government only acknowledges that there was the sole plea agreement negotiated which the movant rejected.

alternatively appears to argue that, if the prior offense occurred in 1998[7] rather than 1993, then it is not foreclosed from attack by defense counsel, and counsel was ineffective for failing to lodge an objection to the use of this prior conviction for enhancement of the movant's sentence. (Cv-DE#13:9).

The §851 information reflects that the movant was previously convicted of a felony in Palm Beach County Circuit Court, case no. 93-2316-CF. (Cv-DE#12:Ex.C). The state court docket as to this prior conviction, which is available on-line, reveals that in 1993, the movant was charged with and thereafter convicted of felony possession of cocaine.[8] Review of the PSI reveals that the movant was sentenced in 1993 to a term of two years probation which was revoked in 1998, at which time he was sentence to 30 days in prison. (PSI ¶42).

The judgment of conviction relied upon for the movant's sentence enhancements was entered in 1993, and §851(e) bars the movant from "challeng[ing] the validity of any prior conviction ... which occurred more than five years before the date of the information ...." 21 U.S.C. §851(e). Thus, the district court was not required to undertake a § 851(b) inquiry because the movant's conviction was more than five years old. See United States v. Shelton, 213 Fed.Appx. 803, 806 (11th Cir. 2007); United States v. Williams, 438 F.3d 1272, 1274 (11th Cir. 2006)(concluding that the district court was not required to adhere to §851(b)'s requirement when, pursuant to 21 U.S.C. §851(e), the defendant was barred from challenging convictions that were more than five years old); United States v. Weaver, 905 F.2d 1466, 1482 (11th Cir. 1990)(citations omitted);

---

[7]It appears that there is a scrivenor's error in the case number referenced in the Superseding Indictment.

[8]http://courtcon.co.palm-beach.fl.us/

According to the petitioner, the underlying state conviction was obtained unconstitutionally because the change of plea proceeding was inadequate or otherwise unlawful. The movant does not claim that he has successfully challenged the validity of the underlying conviction in the state forum.

The law is clear that once the movant successfully attacks in the state forum his prior state convictions used to determine his criminal history points in this case, at that time he may then seek to reopen and reduce the federal sentence. See United States v. Walker, 198 F.3d 811, 813 (11 Cir. 1999).

It is well settled that collateral attacks on prior convictions are generally prohibited in federal sentencing proceedings, and may be raised only when the conviction was obtained in violation of the defendant's right to counsel. United States v. Phillips, 120 F.3d 227, 231 (11 Cir. 1997)(citing, Custis v. United States, 511 U.S. 485 (1994)); United States v. Farris, 77 F.3d 391, 397 & n. 10 (11 Cir.), cert. denied, 519 U.S. 896 (1996). Moreover, the Supreme Court has held that a federal prisoner who has failed to pursue available remedies to challenge a prior conviction (or has done so unsuccessfully) may not collaterally attack that conviction through a motion pursuant to 28 U.S.C. §2255 directed at the enhanced federal sentence. Daniels v. United States, 523 U.S. 374 (2001), citing, Custis v. United States, 511 U.S. 485, 493 (1994)(only prior convictions which may be collaterally attacked at sentencing were those obtained in violation of the right to appointed counsel).

The movant does not assert that he was not represented by counsel, but merely attempts to challenge the voluntariness of the plea. The movant has also not shown that the prior conviction he is challenging in this proceeding has been vacated, and there is

nothing of record to support such a conclusion. Thus, there appears
to have been no legal basis to challenge the validity of underlying
state conviction at the time of the movant's sentencing in federal
court, nor at this time. Under these circumstances, no deficient
performance or prejudice has been demonstrated arising from
counsel's failure to pursue the claim at sentencing or on appeal.

In **claim four**, the movant asserts that he is entitled to
vacatur of his sentence pursuant to Apprendi v. New Jersey, 530
U.S. 466 (2000), together with Blakely v. Washington, 524 U.S. 296
(2004) and its progeny, United States v. Booker, 543 U.S. 220
(2005), because the quantity of drugs involved in the offenses was
not charged in the Indictment nor proved beyond a reasonable doubt.
(Cv-DE#1:12).

Claims of Apprendi, Blakely, and Booker error cannot be raised
for the first time in a motion to vacate.  The Eleventh Circuit has
held that these cases do not apply retroactively on collateral
review. See, Varela v. United States, 400 F.3d 864, 867 (11th Cir.
2005); In re Anderson, __ F.3d. __, 2005 WL 123923, 2-4 (11 Cir
Jan. 21, 2005)(holding that the rules in Blakely and Booker are not
applicable retroactively on collateral review because the Supreme
Court has not expressly declared it to be, but instead expressly
extended the holding "to all cases on direct review"), citing,
Schriro v. Summerlin, 542 U.S. 348, 358 (2004)(holding that Ring v.
Arizona, 536 U.S. 584 (2002), an extension of Apprendi v. New
Jersey, 530 U.S. 466 (2000), is not retroactive to cases on
collateral review)); see also, McCoy v. United States, 266 F.3d
1245, 1259 (11th Cir. 2001).

His ineffective assistance of counsel claim is without merit
as well. At the time of the movant's sentencing on March 16, 2001,

neither _Blakely_ nor _Booker_ had been decided.[9] Although the precursor of those cases, _Apprendi v. New Jersey_, 530 U.S. 466 (2000) had been decided, at that time, the Eleventh Circuit had held that _Apprendi_ did not apply to judge-made determinations pursuant to the Federal Sentencing Guidelines. See, _e.g._, _United States v. Nealy_, 232 F.3d 825, 829 n. 3 (11th Cir. 2000)("The Sentencing Guidelines are not subject to the _Apprendi_ rule."); _United States v. Harris_, 244 F.3d 828, 829-30 (11 Cir. 2001)(holding that _Apprendi_ does not apply to the relevant conduct provision of the Sentencing Guidelines); see also _United States v. Diaz_, 248 F.3d 1065, 1105 (11th Cir. 2001)(noting that "Sentencing Guideline issues are not subject to the _Apprendi_ rule and, thus, there is no requirement that sentencing facts be submitted to a jury and found beyond a reasonable doubt").

The law in the Eleventh Circuit is well established that it is not ineffective assistance for an attorney to fail to foresee a change in the law. See, _United States v. Ardley_, 273 F.3d 991 (11th Cir.2001)(denial of suggestion for rehearing en banc)(our circuit law completely forecloses the contention that an attorney's failure to anticipate the _Apprendi_ decision is ineffective assistance); _Spaziano v. Singletary_, 36 F.3d 1028, 1039 (11th Cir.1994) ("We have held many times that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'"). Counsel was not ineffective for failing to foresee the development in the law, which was contrary to then established Eleventh Circuit precedent.

Moreover, to the extent the movant claims appellate counsel was ineffective for failing to raise such a challenge in the

---

[9]_Blakely_ was decided on June 24, 2004. _Booker_ was decided on January 12, 2005. On September 2, 2004, the Eleventh Circuit in a post-_Blakely_, pre-_Booker_ decision explicitly ruled that the Federal Sentencing Guidelines did not violate a defendant's Sixth Amendment rights. See _United States v. Reese_, 382 F.3d 1308 (11th Cir. 2004)(overruled).

initial brief on appeal, the movant is likewise entitled to no relief on the claim. The movant's direct appeal was concluded on October 21, 2002, prior to the Supreme Court's decision in <u>Blakely</u>.

Had counsel raised the issue, the movant would still be entitled to no relief because his sentence was enhanced based on his prior conviction. The law is clear that there is no Sixth Amendment violation when a district court enhances a sentence based on prior convictions. <u>See</u> <u>United States v. Gallegos-Aquero</u>, 409 F.3d 1274 (11th Cir. May 18, 2005), <u>citing</u>, <u>United States v. Orduno-Mireles</u>, 405 F.3d 960, 962-963 (11th Cir. 2005)(holding that <u>Blakely</u> and its progeny did not disturb the Supreme Court's prior holding in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998), that the government need not allege in its indictment nor prove beyond a reasonable doubt that a defendant had prior convictions in order to use those convictions for purposes of enhancing a defendant's sentence.). Put another way, because the prior-conviction exception remains undisturbed after <u>Booker</u>, a district court does not err by relying on prior convictions to enhance a defendant's sentence. <u>United States v. Orduno-Mireles</u>, <u>supra</u> at 962. <u>See</u> <u>also</u>, <u>United States v. Camacho-Ibarquen</u>, 404 F.3d 1283, 1290 (11th Cir. 2005); <u>United States v. Shelton</u>, 400 F.3d 1325, 1329 (11th Cir. 2005)(same); <u>United States v. McGowan</u>, 134 Fed.Appx. 361 (11th Cir. 2005)(same).

Even if counsel had raised such an objection to the movant's enhanced sentence, which was based on his prior conviction and the government's §851 information, it would have been overruled based on the Supreme Court's decision in <u>Almendarez-Torres</u>. Any further argument in this regard would have been meritless, and a failure to raise a meritless argument will not support an ineffective assistance of counsel claim. <u>See</u> <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999)("An attorney's failure to raise a meritless

argument...cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Under these circumstances, the movant is entitled to no relief on this claim.

Moreover, the Eleventh Circuit has held that <u>Blakely</u> "does not undermine the validity of minimum mandatory sentences, at least not where the enhanced minimum does not exceed the non-enhanced maximum." <u>See</u> <u>Spero v. United States</u>, 375 F.3d 1285, 1286 (11th Cir. 2004), <u>cert. den'd</u>, ___ U.S. _____, 125 S.Ct. 1099 (2005). In <u>Spero</u>, the Eleventh Circuit explicitly distinguished minimum mandatory sentences from the circumstances involved in those cases and indicated that <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986) is still good law. <u>See also</u>, <u>United States v. Underwood</u>, 446 F.3d 1340, 1344-1350 (11th Cir. 2006). In this case, the movant was sentenced to the statutory minimum mandatory term of imprisonment for violation of §841(b)(1)(C).[10] Thus, the movant's sentence was not unlawfully enhanced based on quantity or type of drug involved in the offense. He is therefore entitled to no relief on this claim.

<u>Conclusion</u>

It is therefore recommended that the motion to vacate be denied.

---

[10]The undersigned expresses no opinion on whether the movant's sentence should be reduced pursuant to Amendment 706, as amended by Amendment 711 of the U.S.S.G. based on the recent clarification regarding crack cocaine offenses. If the movant means to argue that he is entitled to resentencing on this basis, he should do so by filing a motion pursuant to 18 U.S.C. §3582(c) in the underlying criminal case.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this_5th day of March, 2008.

UNITED STATES MAGISTRATE JUDGE

cc:  Lelio Delva, <u>Pro Se</u>
     Reg. No. 53866-004
     F.C.I.-Elkton
     P.O. Box 10
     Lisbon, OH 44432


     Karen L. Atkinson, AUSA
     U.S. Attorney's Office
     500 Australian Avenue, Suite 400
     West Palm Beach, FL 33401